Liza M. Walsh
Hector D. Ruiz
Katelyn O'Reilly
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Fax: (973) 757-1090

Tonia A. Sayour
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525

*Attorneys for Plaintiff Telebrands Corp.*
*(additional counsel listed on signature page)*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TELEBRANDS CORP.,** | ) Civil Action No. _____ |
| | ) |
| Plaintiff, | ) **JURY TRIAL DEMANDED** |
| | ) |
| v. | ) |
| | ) |
| **ZURU LTD.** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT**

Plaintiff Telebrands Corp. ("Telebrands"), by and through its attorneys, for its Complaint against defendant Zuru Ltd. ("Zuru"), hereby alleges as follows:

**NATURE OF ACTION**

1.      This is an action for a declaratory judgment that no claim of U.S. Patent No. 9,242,749 ("the '749 patent"), owned by Tinnus Enterprises LLC and exclusively licensed to

defendant Zuru, is infringed by two products being marketed by Telebrands under the names "BATTLE BALLOONS" and "BATTLE BALLOONS COLOR COMBAT."

2.       This is also an action for a declaratory judgment that the '749 patent is unenforceable due to inequitable conduct.

## PARTIES

3.       Plaintiff Telebrands is a corporation organized and existing under the laws of the State of New Jersey, having a place of business at 79 Two Bridges Road, Fairfield, New Jersey 07004.

4.       On information and belief, Zuru is a Chinese corporation that has a place of business at Room 1202 12/F, Energy Plaza, 92 Granville Rd, TST East, Kowloon, Hong Kong. On information and belief, Zuru is doing business throughout the United States and within the State of New Jersey, and within this Judicial District.

## JURISDICTION AND VENUE

5.       These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, *et seq.*, and the Patent Laws of the United States, Title 35 of the United States Code, 35 U.S.C. § 1, *et seq.* Based on the allegations set forth herein, there is an actual and justiciable controversy between Telebrands and Zuru regarding the non-infringement and unenforceability of the '749 patent.

6.       Jurisdiction of this Court is founded on 28 U.S.C. §§ 1331, 1338, and 2201-02.

7.       Venue is proper within this Judicial District under 28 U.S.C. Sections 1391(b) and (c), and 1400(b).

8.      Zuru has consented to venue and jurisdiction in this Court by commencing another action in this District regarding its intellectual property rights against Telebrands, as set forth in Zuru's Complaint in Case No. 2:15-cv-00548-CCC-MF (the "Zuru Action").

## BACKGROUND

9.      Telebrands is a direct marketing company and is engaged in the business of marketing and selling a wide variety of consumer products in this Judicial District and elsewhere, through direct response advertising, catalogue, mail order, and Internet sales, and through national retail stores.

10.     For over thirty years, Telebrands has been a leading developer and marketer of consumer products.  Telebrands is widely known through the retail industry for its success in driving retail sales through its nationwide advertising programs.  For many years, Telebrands has expended enormous human and financial resources in cultivating relationships with a wide variety of retailers, *e.g.*, large retail chains, catalogs, and retail websites, which buy its products.

11.     On June 9, 2015, U.S. Patent No. 9,051,066 ("the '066 patent"), entitled "System and Method for Filling Containers with Fluids" issued to Tinnus Enterprises, LLC ("Tinnus")".  A copy of the '066 patent is attached as Exhibit A.  On information and belief, Zuru is the exclusive licensee of the '066 patent, and has exclusive rights to use on a worldwide basis any rights under the '066 patent.

12.     On January 26, 2016, the '749 patent, entitled "System and Method for Filling Containers with Fluids," issued to Tinnus.  On information and believe, Zuru is the exclusive licensee of the '749 patent, and has exclusive rights to use on a worldwide basis any rights under the '749 patent.

13.     The '749 patent is a continuation of the '066 patent, and has the identical

2

specification.

14. The '749 patent issued with only a single claim, which reads as follows:

An apparatus comprising:

a housing comprising an opening at a first end and a plurality of holes extending through a common face of the housing at a second end;

a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;

a plurality of containers, each container removably attached to a respective one of the hollow tubes; and

a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a respective tube, and each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective container upon detachment of the container from its respective tube, the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing;

wherein the apparatus is configured to fill the containers substantially simultaneously with the fluid.

15. Claim 1 of the '749 patent is nearly identical to claim 1 of the '066 patent, as shown in the following chart:

| Claim 1 of U.S. Patent No. 9,051,066 | Claim 1 of U.S. Patent No. 9,242,749 |
|---|---|
| A apparatus comprising: | An apparatus comprising: |
| a housing comprising an opening at a first end and a plurality of holes extending through a common face of the housing at a second end; | a housing comprising an opening at a first end and a plurality of holes extending through a common face of the housing at a second end; |
| a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing; | a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing; |
| a plurality of containers, each container removably attached to a respective one of the | a plurality of containers, each container removably attached to a respective one of the |

| | |
|---|---|
| hollow tubes; and | hollow tubes; and |
| a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, | a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a respective tube, |
| and each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach the hollow tubes thereby causing the elastic fastener to automatically seal the containers; | and each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective container upon detachment of the container from its respective tube, the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing; |
| wherein the apparatus is configured to fill the containers substantially simultaneously with the fluid. | wherein the apparatus is configured to fill the containers substantially simultaneously with the fluid. |

16.     During prosecution of the '749 patent, claim 1 was rejected on the ground of double patenting over claim 1 of the '066 patent, because the claims are not patently distinct from each other.  Instead of amending the claim, the applicant overcame this rejection by filing a terminal disclaimer with respect to the '066 patent.

17.     Mr. Joshua Malone ("Malone") is the named inventor of each of the '066 patent and the '749 patent.  Additionally, on information and belief, Malone is the owner and President of Tinnus.  Malone assigned his rights in the '066 patent and the '749 patent to Tinnus, which exclusively licensed its rights to Zuru.

18.     Telebrands designed and developed two water balloon-filling products that it recently began marketing, which it refers to as BATTLE BALLOONS and BATTLE BALLOONS

COLOR COMBAT (collectively, the "BATTLE BALLOONS Products").  BATTLE BALLOONS and BATTLE BALLOONS COLOR COMBAT have connectors with substantially similar configurations; the latter product is designed to fill the balloons with colored water.

19.    The BATTLE BALLOONS Products do not infringe any claim of the '749 patent. Among other things, the '749 patent includes a single independent claim having numerous limitations that are missing from the BATTLE BALLOONS Products, including, *inter alia*, the following limitation: "a housing comprising an opening at a first end, and *a plurality of holes extending through a common face of the housing at a second end*."  Figure 2 of the '749 patent, reproduced below, illustrates this feature:



FIG. 2

Specifically, the '749 patent discloses that the housing (12) includes an opening (22) at a first end (A) for connection to a water supply, and a plurality of holes (26) extending through a common

face of the housing at a second end (B) for connection to tubes (16) that conduct fluid to fill balloons (18A).

20.     The BATTLE BALLOONS Products do not include "a plurality of holes extending through *a common face of the housing at a second end,"* as claimed in the '749 patent.  As illustrated in the drawing of the housing of the BATTLE BALLOONS Products below, one end of the housing (the end on the bottom that is not readily visible) has an internal opening that fastens to a faucet or hose coupling. The other end surface (shown at the top of the drawing) is a flat face with no holes.  A specially designed helical, structure winds around the longitudinal axis of the housing in between the two ends of the housing.  The helical structure has multiple stepped faces through which holes extend for connecting to tubes (not shown) for filling water balloons.  Each stepped face includes a single hole.  Thus there are not "a plurality of holes extending through a common surface of the housing at a second end" in the BATTLE BALLOONS Products.



21.     Another limitation of claim 1 of the '749 patent requires "a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing."  The BATTLE BALLOONS Products do not include this feature of the claims either for at least reasons similar to those discussed above.  Other limitations of independent claim

1 also are not present in the BATTLE BALLOONS Products. Because the BATTLE BALLOONS Products are missing at least one limitation of the sole claim 1 of the '749 patent, there can be no literal infringement of the '749 patent.

22.     During prosecution of the '066 patent, the claims were amended to recite the claimed limitation of "**a plurality of holes extending through a common face of the housing** at a second end."  In addition, during its prosecution of the '066 patent, the applicant argued that this claim limitation distinguished its invention from the prior art.  Because the '749 patent is a continuation of the '066 patent, the doctrine of prosecution history estoppel precludes Zuru for asserting that "**a plurality of holes extending through a common face of the housing** at a second end" is present in the BATTLE BALLOONS Products under the doctrine of equivalents with respect to the '749 patent.

23.     On December 16, 2015, *after* Telebrands filed a declaratory judgment action in this judicial district, seeking a declaration of non-infringement of the '066 patent, *Telebrands Corp. v. Zuru Ltd.*, Civil Action No. 2:15-cv-08675-CCC-MF (D.N.J.), Zuru and Tinnus sued Telebrands in the Eastern District of Texas, *Tinnus Enterprises, LLC, et al. v. Telebrands Corp.*, Civil Action No. 6:15-cv-1154-RWS-JDL (E.D. Tex.), alleging that Telebrands' BATTLE BALLOONS Products infringe the '066 patent.  Zuru has not articulated any basis for asserting that the BATTLE BALLOONS Products infringe the '066 patent.

24.     Because Zuru has asserted that the BATTLE BALLOONS Products infringe the '066 patent, Zuru undoubtedly will assert that the BATTLE BALLOONS Products infringe the '749 patent, whose sole independent claim is nearly identical to the independent claim of the '066 patent.

25.     Accordingly, there is a substantial controversy between Telebrands and Zuru,

whose legal interests are adverse and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Telebrands' BATTLE BALLOONS Products infringe the '749 patent, and whether the '749 patent is unenforceable.

26.     The attorney of record for the prosecution of the patent application that issued as the '749 patent is Mr. Brett Mangrum ("Patent Counsel").

27.     On May 28, 2015, Tinnus filed application serial no. 14/723,953, which issued as the '749 patent, as a continuation of application serial no. 14/492,487, which issued as the '066 patent.

28.     37 C.F.R. § 1.56(a) sets forth that, "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability."

29.     Additionally, 37 C.F.R. § 1.56(a) sets forth that, "The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."

30.     37 C.F.R. § 1.56(b) defines "information that is material to patentability" as follows:

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>>> (i) Opposing an argument of unpatentability relied on by the Office, or
>>> (ii) Asserting an argument of patentability.

31.     Each of Patent Counsel, Malone and Tinnus is subject to the duty of disclosure set

forth in 37 C.F.R. § 1.56(a).

32.     On June 22, 2015, Telebrands filed a petition for post-grant review ("PGR Petition") of the '066 patent at the U.S. Patent and Trademark Office before the Patent Trial and Appeals Board ("Board"), asserting, *inter alia*, that all claims of the patent were invalid under 35 U.S.C. §§ 112 and/or 103.

33.     Neither Patent Counsel, Malone nor Tinnus promptly disclosed the PGR Petition to the Examiner who was examining the application that issued as the '749 patent, and made no such disclosure at any time before issuance of a notice of allowance.

34.     On September 1, 2015, a notice of allowance issued in connection with the application that resulted in the '749 patent.  The issue fee was paid on September 2, 2015.

35.     On September 14, 2015, Patent Counsel filed a petition, which was granted that same day, withdrawing the application that resulted in the '749 patent from issuance.  The petition was accompanied by an Information Disclosure Statement ("IDS"), disclosing Telebrands' PGR Petition, nearly three months after it was filed.

36.     On December 14, 2015, a supplemental notice of allowance was issued in connection with the application that resulted in the '749 patent.  Since the issue fee had already been paid previously, it did not have to be paid again.

37.     On January 4, 2016, prior to issuance of the '749 patent but *after* payment of the issue fee, the Board issued its decision instituting post-grant review of the '066 patent ("PGR Decision").  In its decision, the Board determined that "it is more likely than not that Petitioner [Telebrands] would prevail in showing that claims [1-6, 8, and 10-14 of the '066 patent] are unpatentable," under 35 U.S.C. § 112(b) and/or 35 U.S.C. § 103(a).  A copy of the PGR Decision is attached as Exhibit B.

38.     The PGR Decision is material to patentability of the '749 patent.   The PGR Decision is material for at least the following reasons: (i) the applicant filed a terminal disclaimer in the '749 patent because the Examiner found that the claims of the '749 patent are not patentably distinct from the claims of the '066 patent; and (ii) the sole allowed claim of the '749 patent is nearly identical to the sole independent claim of the '066 patent.   Accordingly, the claim of the '749 patent is more likely than not invalid for at least the reasons stated in the PGR Decision, and this was known to Patent Counsel, Malone and Tinnus.

39.     Prior to issuance of the '749 patent, on January 7, 2016 and January 25, 2016, counsel for Telebrands contacted Patent Counsel, provided him with a copy of the PGR Decision, and reminded him of his duty of disclosure.

40.     Tinnus, a party to the PGR proceeding with respect to the '066 patent, and Malone, the owner and President of Tinnus, were also aware of the PGR Decision prior to issuance of the '749 patent.

41.     On January 21, 2016, Patent Counsel submitted an Applicant Summary of Examiner Interview to the USPTO, in which he stated that on January 11, 2016, an Examiner Interview was conducted and the Examiner was aware of the PGR Decision.   The PGR Decision was not made of record, and there is no indication that the Examiner of the application that issued as the '749 patent considered it.

42.     Neither Patent Counsel, Malone, nor Tinnus submitted the PGR Decision to the USPTO in the manner prescribed by §§ 1.97(b)-(d) and 1.98 prior to issuance of the '749 patent.   Additionally, the USPTO did not cite the PGR Decision prior to issuance of the '749 patent.

43.     Patent Counsel, Malone, and Tinnus knew that by failing to submit the PGR Decision to the USPTO in the manner prescribed by §§ 1.97(b)-(d) and 1.98, the application that

resulted in the '749 patent would not be withdrawn from issuance.

44.     The failure of Patent Counsel, Malone, and Tinnus to disclose the PGR Decision in accordance with 37 C.F.R. § 1.56 was done with a specific intent to deceive the USPTO, and was intended to prevent and did prevent withdrawal of the application that resulted in the '749 patent from issuance.

## COUNT ONE
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '749 PATENT

45.     Telebrands repeats and realleges all of the factual allegations made above and incorporates them herein by reference.

46.     Telebrands has not infringed and does not infringe, directly or indirectly, either literally or under the doctrine of equivalents, any claim of the '749 patent through the manufacture, use, sale, offer to sell, or importation of the BATTLE BALLOONS Products.

47.     Accordingly, Telebrands seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-02 that no claim of the '749 patent is infringed by Telebrands' manufacture, use, sale, offer to sell, or importation of the BATTLE BALLOONS Products.

48.     Telebrands has no adequate remedy at law.

49.     Accordingly, Telebrands seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-02 that the '749 patent is not infringed.

## COUNT TWO
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '749 PATENT

50.     Telebrands repeats and realleges all of the factual allegations made above and incorporates them herein by reference.

51.     The '749 patent is unenforceable due to Patent Counsel's, Malone's, and Tinnus' inequitable conduct before the USPTO.

52.     Patent Counsel, Malone, and Tinnus had a general duty of candor and good faith in its dealings with the USPTO.   Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the USPTO all information that he knows to be material to the examination of his pending patent application.   The inventor's duty extends to his representatives, such as his attorneys, and all others who are substantially involved in the preparation and prosecution of the patent application.

53.     Patent Counsel, Malone, and Tinnus knew of their duty of candor and good faith in connection with the '749 patent.

54.     Patent Counsel, Malone, and Tinnus breached their duty of candor and good faith before the USPTO.

55.     Patent Counsel, Malone, and Tinnus knew the PGR Decision was material to patentability of the '749 patent prior to issuance of the application that resulted in the '749 patent.

56.     Patent Counsel, Malone, and Tinnus acted with the specific intent to deceive the USPTO by failing to disclose the PGR Decision to the USPTO in accordance with 37 C.F.R. § 1.56.

57.     Telebrands has no adequate remedy at law.

58.     Accordingly, Telebrands seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-02 that the '749 patent is unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE,** Telebrands demands judgment as follows:

a.     Entering judgment in Telebrands' favor and against Zuru on its claims;

b.     Declaring that the BATTLE BALLOONS Products do not infringe any claim of the '749 patent;

c.      Declaring that the '749 patent is unenforceable;

d.      Preliminarily and permanently enjoining Zuru, its agents, factories, servants, employees and attorneys and all those acting in concert or participation with them from falsely representing or suggesting in the U.S. that the BATTLE BALLOONS Products infringe the '749 patent;

e.      Declaring this case an exceptional case and awarding Telebrands its attorneys' fees; and

f.      Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Telebrands demands a jury trial on all issues and claims so triable.


                                  Respectfully submitted,


Dated:  January 26, 2016              By *s/ Liza M. Walsh*

                                  Liza M. Walsh
                                  Hector D. Ruiz
                                  Katelyn O'Reilly
                                  CONNELL FOLEY LLP
                                  One Newark Center
                                  1085 Raymond Boulevard, 19th Floor
                                  Newark, New Jersey 07102
                                  Tel.: (973) 757-1100
                                  Fax: (973) 757-1090

                                  Robert T. Maldonado (*pro hac vice* motion to be submitted)
                                  Tonia A. Sayour
                                  Elana Araj (*pro hac vice* motion to be submitted)
                                  COOPER & DUNHAM LLP
                                  30 Rockefeller Plaza
                                  New York, New York 10112
                                  Tel.: (212) 278-0400
                                  Fax: (212) 391-0525

David Boies (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, NY 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350

D. Michael Underhill (*pro hac vice* motion to be submitted)
Richard S. Meyer (*pro hac vice* motion to be submitted)
Kyle N. Smith (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Tel.: (202) 237-2727
Fax: (202) 237-6131

*Attorneys for Plaintiff Telebrands Corp.*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is related to the following actions:

(1) The action filed on January 27, 2015 and pending in the United States District Court for the District of New Jersey: *Zuru, Ltd. v. Telebrands Corp.*, No. 2:15-cv-00548-CCC-MF;

(2) The action filed on June 9, 2015 and pending in the United States District Court for the Eastern District of Texas: *Tinnus Enterprises, LLC, et al. v. Telebrands Corp., et al.*, No. 6:15-cv-00551 (RWS)(JDL);

(3)   The action filed on December 15, 2015 and pending in the United States District Court for the District of New Jersey: *Telebrands Corp. v. Zuru, Ltd.*, No. 2:15-cv-08675-CCC-MF; and

(4)   The action filed on December 16, 2015 and pending in the United States District Court for the Eastern District of Texas: *Tinnus Enterprises, LLC, et al. v. Telebrands Corp.*, No. 6:15-cv-01154 (RWS)(JDL).


January 26, 2016                    By *s/ Liza M. Walsh*

                                    Liza M. Walsh
                                    Hector D. Ruiz
                                    Katelyn O'Reilly
                                    CONNELL FOLEY LLP
                                    One Newark Center
                                    1085 Raymond Boulevard, 19th Floor
                                    Newark, New Jersey 07102
                                    Tel.: (973) 757-1100
                                    Fax: (973) 757-1090

                                    Robert T. Maldonado (*pro hac vice* motion to be submitted)
                                    Tonia A. Sayour
                                    Elana Araj (*pro hac vice* motion to be submitted)
                                    COOPER & DUNHAM LLP

30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525

David Boies (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, NY 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350

D. Michael Underhill (*pro hac vice* motion to be submitted)
Richard S. Meyer (pro hac vice motion to be submitted)
Kyle N. Smith (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Tel.: (202) 237-2727
Fax: (202) 237-6131

*Attorneys for Plaintiff Telebrands Corp.*

## CERTIFICATION PURSUANT TO L. CIV. R. 201.1

Pursuant to Local Civil Rule 201.1, Telebrands, through its attorneys, certifies that the above captioned matter is not subject to compulsory arbitration.


January 26, 2016                         By s/ *Liza M. Walsh*


Liza M. Walsh
Hector D. Ruiz
Katelyn O'Reilly
CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Fax: (973) 757-1090

Robert T. Maldonado (*pro hac vice* motion to be submitted)
Tonia A. Sayour
Elana Araj (*pro hac vice* motion to be submitted)
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525

David Boies (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, NY 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350

D. Michael Underhill (*pro hac vice* motion to be submitted)
Richard S. Meyer (*pro hac vice* motion to be submitted)
Kyle N. Smith (*pro hac vice* motion to be submitted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW

Washington, DC 20015
Tel.: (202) 237-2727
Fax: (202) 237-6131

*Attorneys for Plaintiff Telebrands Corp.*

# EXHIBIT A

US009051066B1

(12) **United States Patent**           (10) **Patent No.:**     **US 9,051,066 B1**
Malone                                   (45) **Date of Patent:**     **Jun. 9, 2015**

(54) **SYSTEM AND METHOD FOR FILLING CONTAINERS WITH FLUIDS**

(71) Applicant: **TINNUS ENTERPRISES, LLC**, Plano, TX (US)

(72) Inventor: **Joshua Malone**, Plano, TX (US)

(73) Assignee: **TINNUS ENTERPRISES, LLC**, Plano, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/492,487**

(22) Filed: **Sep. 22, 2014**

**Related U.S. Application Data**

(60) Provisional application No. 61/942,193, filed on Feb. 20, 2014, provisional application No. 61/937,083, filed on Feb. 7, 2014.

(51) **Int. Cl.**
*B65B 3/04*     (2006.01)
*B65B 3/28*     (2006.01)
*A63H 27/10*    (2006.01)

(52) **U.S. Cl.**
CPC ... *B65B 3/04* (2013.01); *B65B 3/28* (2013.01); *A63H 2027/1041* (2013.01); *A63H 27/10* (2013.01)

(58) **Field of Classification Search**
CPC ........... A63H 27/10; A63H 2027/1041; A63H 2027/105; A63H 2027/1033; B65B 3/04; B65B 3/28
USPC ................. 141/234–248, 10, 114; 383/3, 71; 446/220–226
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 262,517 | A | * | 8/1882 | Hendrie ........................ | 446/220 |
| 1,098,286 | A | * | 5/1914 | Herbert ........................ | 446/222 |
| 1,166,690 | A | * | 1/1916 | Miller ........................ | 446/222 |
| 1,350,935 | A | * | 8/1920 | Frank Pastor ................ | 446/222 |
| 1,478,757 | A | * | 12/1923 | O'Connor .................... | 446/222 |
| 1,484,575 | A | * | 2/1924 | Shulin ........................ | 239/602 |
| 1,703,463 | A | * | 2/1929 | Weigel ........................ | 446/186 |
| 2,027,225 | A | * | 1/1936 | Gill ........................ | 446/226 |
| 2,161,274 | A | * | 6/1939 | Behrend ...................... | 446/224 |
| 2,553,941 | A | * | 5/1951 | Raab ........................ | 446/186 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| FR | 2911512 | * | 7/2008 |
| GB | 294273 | | 7/1928 |

(Continued)

OTHER PUBLICATIONS

Balloon Powered Boat, May 17, 2011, http://alittlelearningfortwo.blogspot.com/.*

(Continued)

*Primary Examiner* — Kevin P Shaver
*Assistant Examiner* — Andrew Stclair

(57)                    **ABSTRACT**

An example embodiment of an apparatus includes a housing with an opening at a first end and a plurality of holes at a second end, a plurality of hollow tubes attached to the plurality of holes, a plurality of containers removably attached to the hollow tubes, and a plurality of elastic fasteners, each elastic fastener clamping each container to a corresponding hollow tube, such that when the containers are filled with fluid and detached from the corresponding hollow tubes, each elastic fastener seals each container with the fluid inside.

**14 Claims, 6 Drawing Sheets**



**US 9,051,066 B1**

Page 2

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,617,624 | A | | 11/1952 | Annis |
| 2,757,960 | A | * | 8/1956 | Hatcher ..................... 239/229 |
| 2,922,252 | A | * | 1/1960 | Dam et al. ................. 446/221 |
| 2,924,041 | A | | 2/1960 | Jackson ..................... 446/224 |
| 3,108,396 | A | * | 10/1963 | Isidore ...................... 446/220 |
| 3,118,672 | A | * | 1/1964 | Dorn .......................... 473/610 |
| 3,154,050 | A | * | 10/1964 | Hanson ...................... 116/210 |
| 3,161,998 | A | * | 12/1964 | Lennox ...................... 141/313 |
| 3,301,490 | A | * | 1/1967 | Hruby, Jr. ................. 239/227 |
| 3,368,302 | A | * | 2/1968 | Martino ..................... 446/224 |
| 3,580,303 | A | * | 5/1971 | Roberge ..................... 141/173 |
| 3,820,200 | A | * | 6/1974 | Myers .................... 24/30.5 S |
| 3,978,555 | A | * | 9/1976 | Weisenthal ................ 24/543 |
| 4,212,460 | A | * | 7/1980 | Kraft ......................... 473/577 |
| 4,416,038 | A | * | 11/1983 | Morrone, III ............... 24/487 |
| 4,428,149 | A | * | 1/1984 | Brown ....................... 446/222 |
| 4,684,137 | A | * | 8/1987 | Armer et al. .............. 473/609 |
| 4,687,458 | A | * | 8/1987 | Handa ........................ 446/222 |
| 4,892,500 | A | * | 1/1990 | Lau ............................ 446/221 |
| 4,911,379 | A | * | 3/1990 | Kopelman .................... 244/31 |
| 4,944,709 | A | * | 7/1990 | Lovik ......................... 446/221 |
| 5,004,633 | A | * | 4/1991 | Lovik ........................... 428/9 |
| 5,029,851 | A | * | 7/1991 | Hagen ........................ 273/458 |
| 5,036,985 | A | * | 8/1991 | Lovik ...................... 211/13.1 |
| 5,119,281 | A | * | 6/1992 | Akman ....................... 362/253 |
| 5,127,867 | A | * | 7/1992 | Lau ............................ 446/221 |
| 5,135,222 | A | * | 8/1992 | Spector ...................... 473/576 |
| D335,901 | S | * | 5/1993 | Gill, III ..................... D21/440 |
| 5,240,450 | A | * | 8/1993 | Graham ...................... 446/267 |
| 5,293,707 | A | * | 3/1994 | Shaeffer ...................... 40/412 |
| 5,301,392 | A | * | 4/1994 | Richman ................ 24/30.5 R |
| 5,370,161 | A | * | 12/1994 | Shafer ....................... 141/114 |
| 5,381,964 | A | | 1/1995 | Reyna |
| 5,439,199 | A | | 8/1995 | Briggs et al. |
| 5,444,962 | A | * | 8/1995 | Bonnet ........................ 53/417 |
| 5,496,203 | A | * | 3/1996 | Murray ...................... 446/222 |
| 5,509,540 | A | * | 4/1996 | Pomerantz ............... 211/13.1 |
| 5,531,626 | A | * | 7/1996 | Deal .......................... 446/473 |
| 5,538,456 | A | * | 7/1996 | Liu et al. ................... 446/473 |
| 5,588,896 | A | * | 12/1996 | Goodman ................... 446/187 |
| 5,628,091 | A | * | 5/1997 | Mueller ....................... 24/3.2 |
| 5,639,526 | A | * | 6/1997 | Kotsiopoulos et al. ..... 473/577 |
| 5,732,530 | A | * | 3/1998 | Pfaff ........................... 53/403 |
| 5,755,419 | A | * | 5/1998 | Gearhart et al. ........ 248/346.01 |
| 5,826,803 | A | * | 10/1998 | Cooper ....................... 239/556 |
| 5,944,576 | A | * | 8/1999 | Nelson et al. ............. 446/220 |
| 5,964,636 | A | * | 10/1999 | Carrera ...................... 446/220 |
| 5,975,983 | A | * | 11/1999 | Panec ........................ 446/475 |
| 6,007,403 | A | * | 12/1999 | Urspringer et al. ........ 446/222 |
| 6,047,866 | A | * | 4/2000 | Brown ........................ 222/608 |
| 6,106,135 | A | * | 8/2000 | Zingale et al. ............. 362/186 |
| 6,149,488 | A | * | 11/2000 | Stark ......................... 446/220 |
| 6,158,619 | A | * | 12/2000 | D'Andrade et al. .......... 222/79 |
| 6,176,758 | B1 | * | 1/2001 | Wu ............................ 446/224 |
| 6,386,938 | B1 | * | 5/2002 | Novak et al. .............. 446/186 |
| 6,478,057 | B1 | * | 11/2002 | Bearss et al. .............. 141/313 |
| 6,478,651 | B1 | * | 11/2002 | Weir ......................... 446/220 |
| 6,527,615 | B1 | * | 3/2003 | Boehler ..................... 446/220 |
| 6,558,223 | B1 | * | 5/2003 | Matthews .................. 446/153 |
| 6,598,807 | B1 | * | 7/2003 | Anzalone ................... 239/302 |
| 6,716,083 | B1 | * | 4/2004 | Castro ....................... 446/220 |
| 6,793,094 | B2 | * | 9/2004 | Turnbough ................ 220/603 |
| 7,444,938 | B2 | * | 11/2008 | Tippmann ................. 102/498 |
| 7,762,214 | B2 | * | 7/2010 | Ritchey ..................... 119/707 |
| 8,037,906 | B1 | * | 10/2011 | Grillo ......................... 141/10 |
| 8,141,326 | B2 | * | 3/2012 | Wang ..................... 53/284.7 |
| 8,251,111 | B2 | * | 8/2012 | Nelson et al. ............. 141/361 |
| 8,733,675 | B2 | * | 5/2014 | Leber ........................ 239/589 |
| 8,789,565 | B1 | * | 7/2014 | Wicken ..................... 141/237 |
| 2001/0003505 | A1 | * | 6/2001 | Bertrand .................... 362/101 |
| 2004/0127311 | A1 | * | 7/2004 | Brock ........................ 473/577 |
| 2004/0174718 | A1 | * | 9/2004 | Ohlund ...................... 362/565 |
| 2005/0004430 | A1 | * | 1/2005 | Lee et al. ................... 600/116 |
| 2005/0138862 | A1 | * | 6/2005 | O'Connor ................. 47/41.12 |
| 2005/0176339 | A1 | * | 8/2005 | Cuisinier .................... 446/220 |
| 2006/0291217 | A1 | * | 12/2006 | Vanderschuit ............. 362/363 |
| 2007/0167107 | A1 | * | 7/2007 | Petell et al. ............... 446/220 |
| 2008/0121309 | A1 | * | 5/2008 | Boise et al. ................ 141/313 |
| 2008/0166943 | A1 | * | 7/2008 | Hou ............................ 446/86 |
| 2010/0326212 | A1 | * | 12/2010 | Furey et al. .......... 73/863.31 |
| 2011/0151744 | A1 | * | 6/2011 | Archer et al. ............. 446/222 |
| 2011/0253256 | A1 | * | 10/2011 | Finley ......................... 141/98 |
| 2013/0118640 | A1 | * | 5/2013 | Saggio ....................... 141/313 |
| 2014/0030452 | A1 | * | 1/2014 | Warner et al. ............ 428/34.1 |
| 2014/0076454 | A1 | * | 3/2014 | Kjar ............................. 141/1 |
| 2014/0212074 | A1 | * | 7/2014 | Durst ........................... 383/44 |
| 2014/0316207 | A1 | * | 10/2014 | Hain ......................... 600/194 |
| 2015/0020480 | A1 | * | 1/2015 | Harris et al. ................ 53/416 |
| 2015/0056887 | A1 | | 2/2015 | Harter et al. |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| GB | 1277377 | * | 6/1972 | |
| WO | WO2015/027187 | | 2/2015 | |

OTHER PUBLICATIONS

www.conwinonline.com/shop/air-force4/, accessed Mar. 19, 2015, published Jun. 11, 2013.*
https://www.youtube.com/watch?v=-HIZjZII2O8o, accessed Apr. 7, 2015, allegedly published May 12, 2014.
https://www.youtube.com/watch?v=wCajj0KPV7c, accessed Apr. 7, 2015, allegedly published Aug. 19, 2014.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

U.S. Patent    Jun. 9, 2015    Sheet 5 of 6    US 9,051,066 B1



FIG. 6



**FIG. 7**



**FIG. 8**

US 9,051,066 B1

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**SYSTEM AND METHOD FOR FILLING CONTAINERS WITH FLUIDS**

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of priority under 35 U.S.C. §119(e) to U.S. Provisional Application Ser. No. 61/937,083 entitled "SYSTEM AND METHOD FOR FILLING INFLATABLE CONTAINERS WITH LIQUID" filed Feb. 7, 2014 and to U.S. Provisional Application Ser. No. 61/942,193 entitled "SYSTEM AND METHOD FOR FILLING INFLATABLE CONTAINERS WITH FLUIDS" filed Feb. 20, 2014, which are hereby incorporated by reference in their entireties.

## TECHNICAL FIELD

The present disclosure relates generally to fluid inflatable systems and more particularly, to a system and method for filling containers with fluids.

## BACKGROUND

Inflatable containers such as balloons can be filled with a variety of fluids, such as air, helium, water, medicines, etc. In some cases, a lot of inflatable containers may need to be filled with fluids. For example, balloons used as props in conventions, large parties, etc. may number in the hundreds and may require substantial human effort to fill them all in a timely manner. In another example, water balloons used as kids' toys may need to be filled in large numbers to aid in various games. Various methods may be employed to fill such inflatable containers. For example, an individual may blow up and tie each balloon by hand or use a tank of compressed air or helium to inflate the balloon, which then has to be tied. In another example, an individual may fill water balloons with water by hand one at a time, and then tie the balloons, which can all be quite time-consuming. Moreover, the inflatable containers may be damaged or filled to different volumes.

## BRIEF DESCRIPTION OF THE DRAWINGS

To provide a more complete understanding of the present disclosure and features and advantages thereof, reference is made to the following description, taken in conjunction with the accompanying figures, wherein like reference numerals represent like parts, in which:

FIG. 1 is a simplified perspective view illustrating an example configuration of an embodiment of a system for filling containers with fluids;

FIG. 2 is a simplified diagram illustrating a cross-sectional view of example details of an embodiment of the system;

FIG. 3 is a simplified diagram illustrating other example details of an embodiment of the system;

FIG. 4 is a simplified diagram illustrating yet other example details of an embodiment of the system;

FIG. 5 is a simplified diagram illustrating yet other example details of an embodiment of the system;

FIG. 6 is a simplified diagram illustrating yet other example details of an embodiment of the system;

FIG. 7 is a simplified diagram illustrating yet other example details of an embodiment of the system; and

FIG. 8 is a simplified flow diagram illustrating example operations that may be associated with an embodiment of the system.

## DETAILED DESCRIPTION OF EXAMPLE EMBODIMENTS

### Overview

An example embodiment of an apparatus includes a housing (e.g., casing, covering, etc. with a cavity inside) with an opening at a first end and a plurality of holes at a second end, a plurality of hollow tubes attached to the plurality of holes, a plurality of containers (e.g., receptacles, vessels, ampules, test-tubes, balloons, etc.) removably attached to the hollow tubes, and a plurality of elastic fasteners, each elastic fastener clamping each container to a corresponding hollow tube, such that when the containers are filled with fluid and detached from the corresponding hollow tubes, each elastic fastener seals each container with the fluid inside.

### Example EMBODIMENTS

It is to be understood that the following disclosure describes several example embodiments for implementing different features, structures, or functions of the system. Example embodiments of components, arrangements, and configurations are described herein to simplify the present disclosure. However, these example embodiments are provided merely as examples and are not intended to limit the scope of the invention.

The present disclosure may repeat reference numerals and/or letters in the various exemplary embodiments and across the Figures provided herein. This repetitions is for the purpose of simplicity and clarity and does not in itself indicate a relationship between the various exemplary embodiments and/or configurations discussed in the various Figures.

FIG. 1 is a simplified diagram illustrating an example embodiment of a system 10 for filling containers with fluids. System 10 includes a housing 12 removably attached to a hose 14 (e.g., tube, pipe, etc.) on a first end A and to a plurality of hollow tubes 16 on a second end B. As used herein, the term "housing" encompasses a hollow space enclosed by a rigid or semi-rigid casing (e.g., covering, skin, sleeve, sheath, etc.). In some embodiments, end A may include a threaded opening configured to mate with corresponding threads on hose 14. In some embodiments, end A may be smaller in circumference or area than end B. Hose 14 may be connected to a fluid source, such as a water tank, gas tank, water supply line, etc. on end A. End B may include a plurality of holes (e.g., configured in an array), configured to fit tubes 16. In some embodiments, tubes 16 may be permanently attached (e.g., welded, brazed, stuck with adhesives, press-fitted, etc.) to housing 12. In other embodiments, tubes 16 may be removably attached (e.g., with threads, pressure, etc.) to housing 12.

A plurality of containers 18 may be clamped (e.g., attached, fastened, held, clinched, secured, etc.) to plurality of tubes 16 using elastic valves 20. As used herein, the term "container" refers to an object that can hold something, such as fluids. The term "valve" refers to an object that regulates, directs, or controls the flow of fluids, by opening, closing, or partially obstructing passageways of fluid flow. In an example embodiment, elastic valves 20 comprise elastic fasteners, such as O-rings. In another example embodiments, elastic valves 20 comprise corrugations, smocking, elastic fibers, etc. fabricated into the necks of containers 18 such that force is required to pull open the necks of containers 18, and removal of the force causes the necks to constrict and close. In yet another example embodiment, elastic valves comprise internal or external plugs affixed to the necks of containers 18, through which tubes 16 may be pushed through to clamp containers 18 thereto.

US 9,051,066 B1

3

Note that each of containers 18 have an opening to facilitate clamping to tubes 16 and a cavity for containing fluid. For example, one end of an example tube 16A may be fitted through a hole in end B of housing 12, and the other end of tube 16A may be inserted into an example container 18A. An example elastic valve 20A (e.g., O-ring, comprising a mechanical gasket typically in a toroid shape; elastic ring, such as a rubber-band) of sufficient size to expand and clamp around tube 16A may be dispose around (e.g., placed over) a neck (e.g., portion just below opening) of container 18A, clamping and sealing container 18A to tube 16A. Thus, elastic valve 20A may be in an open configuration when container 18A is attached to tube 16A; in elastic valve 20A's open configuration, the neck of container 18A is open, allowing container 18A to fill with fluid. After container 18A is filled with fluid, it may be removed from tube 16A, whereupon elastic valve 20A closes, thereby closing the neck of container 18A and sealing the fluid inside.

In one example embodiment, containers 18 may comprise inflatable balloons that may be filled with fluids such as water, air or helium. In another example embodiment, containers 18 may comprise flexible (e.g., stretchy, springy, etc.) elastic containers that may be typically with gaseous or liquid medications. As used herein, the term "elastic" is meant to refer to a property of a material that allows the material to resume its normal shape spontaneously after contraction, dilation, or distortion. In an example, an elastic material may be stretched to 200% of its original length, and the material may return to its original length when the stretching force is removed.

In yet another example embodiment, containers 18 may comprise flexible containers that may be filled with body fluids (e.g., urine, blood) for example, to collect multiple samples simultaneously for testing. Virtually any type and kind of fluid may be used within the broad scope of the embodiments. Note that in some embodiments, containers 18 need not be inflatable or flexible in their entireties. For example, a bottom portion of containers 18 may be inelastic (e.g., glass, plastic, metal, etc., of fixed shape and size), and a top portion may be flexible enough to be inserted around tubes 16 and clamped thereon.

When the fluid source is turned on, fluid may flow through housing 12, tubes 16 and fill containers 18. In some embodiments, when housing 12 is connected to a stream of liquid, containers 18 may be filled with the liquid. In some embodiments, the fluid may be supplied at high pressure. Virtually any mechanism that facilitates fluid flow through tubes 16 at sufficient pressure to fill containers 18 may be used within the broad scope of the embodiments. After containers 18 have reached a desired size or volume, they may be detached from tubes 16. In one example embodiment, filled containers 18 may be detached by pulling them away from tubes 16.

In another example embodiment, the connecting force holding filled containers 18 to tubes 16 may be overcome by an upward acceleration on tubes 16, for example, when they are shaken. Thus, filled containers 18 may be detached by shaking housing 12 (or tubes 16) sufficiently vigorously to cause containers 18 to fall off from tubes 16. In some embodiments, the connecting force holding filled container to its corresponding tube is not less than the weight of the filled container; in a specific embodiment, the connecting force holding each container to its corresponding tube is exactly equal to the weight of the filled container. The connecting force may be provided by a combination of constricting forces and friction forces from elastic valves 20.

In yet other embodiments, containers 18 may fall off under gravity; for example, when filled containers 18 reach a threshold weight, they slip off tubes 16 due to gravity. The threshold

4

weight may be based upon the tightness of elastic valves 20, friction between tubes 16 and containers 18, and force from the weight of containers 18 (among other parameters). In various embodiments, containers 14 may slide off tubes 16 and elastic valves 20 may constrict the necks of containers 18, sealing them. In some embodiments, containers 18 may be marked with volumetric measurements, and fluid flow may be turned off when the fluid has filled containers 18 to a desired volume.

In some embodiments, hollow tubes 16 may be made of a rigid material (e.g., steel, glass); in other embodiments, tubes 16 may be made of a flexible material (e.g., thin plastic). In some embodiments, tubes 16 may be thick, short and rigid; in other embodiments, tubes 16 may be slender, long and flexible. Thus, hollow tubes 16 may be flexible, semi-rigid, or rigid, based on its material of construction, design, or a combination thereof. Note that tubes 16 may be of different lengths, for example, to prevent crowding and to accommodate a larger number of containers 18 than would be possible if tubes 16 were of the same length. Thus, at least some of hollow tubes 16 may be of different lengths than the others.

Also, tubes 16 may be flexible to enable containers 18 to expand. Thus, as containers 18 fill with fluid and expand, they push against each other, flexing tubes 16. The outermost tubes 16 may be flexed more than the innermost tubes 16 (outer and inner being in reference to a center-point of housing 12, with the inner tubes 16 being closer to the center-point, and the outer tubes 16 being farther from the center-point).

Turning to FIG. 2, FIG. 2 is a simplified cross-sectional view of a portion of an embodiment of system 10. Housing 12 comprises a threaded opening 22 at end A, an internal cavity 24, and an array of holes 26 at end B. Internal cavity 24 facilitates distributing the fluid entering at threaded opening 22 to array of holes 26 at end B. In some embodiments, threaded opening 22 may be configured for attaching to a fluid supply hose 14 (e.g., garden hose, plastic tube, etc.). In other embodiments, threaded opening 22 may be attached to corresponding threads in a valve. Array of holes 26 may be configured for connecting first ends 28 of tubes 16 by any suitable means. In some embodiments, first ends 28 of tubes 16 may be connected to corresponding holes 26 by compressing or gluing. In some embodiments, a number of holes 26 in housing 12 and a number of tubes 16 can correspond to a number of containers 18 that are desired to be filled and sealed substantially simultaneously.

To clarify further, only one example tube 16A is shown in the figure. A first end 28A of tube 16A is fitted through a corresponding hole 26A in housing 12. A second end 29A of tube 16A is inserted into container 18A. Elastic valve 20A may be placed around the neck of container 18A clamping the neck to tube 16A. An internal volume 30A of container 18A may be filled with fluid appropriately.

To fill and seal containers 18, housing 12 may be attached to a fluid supply tube (e.g., garden hose) and the fluid supply may be turned on. The fluid enters housing 12, is distributed to holes 26, travels down tubes 16, and fills containers 18. Containers 18 may be filled and may expand substantially simultaneously. When containers 18 have reached a desired size and/or they are filled with the desired volume of fluid, they may be removed from tubes 16. They can be removed by falling off, by shaking them off, by pulling them off by hand, etc. As each container 18A is removed from corresponding tube 16A, respective elastic valve 20A may constrict and close the neck of container 18A, sealing it with the fluid inside.

US 9,051,066 B1

5

Turning to FIG. **3**, FIG. **3** is a simplified diagram illustrating example details of a valve **31** that may be attached between hose **14** and housing **12** according to an embodiment of system **10**. One end of valve **31** may be attached to hose **14** and the other end may be attached to threaded opening **22** of housing **12** (e.g., using threads). A lever **32** may be turned from one side (of valve **31**) to another (e.g., as indicated by arrow C) to turn on and turn off fluid flow to housing **12**. For example, to turn on the fluid flow, lever **32** may be turned to a first position; lever **32** may be turned to a second position (e.g., different from the first position) to turn off fluid flow.

Turning to FIG. **4**, FIG. **4** is a simplified diagram illustrating example details of an embodiment of system **10**. Housing **12** may be attached to a spigot **33** (e.g., nozzle, faucet, outlet, etc.) that connects to the fluid source. Spigot **33** may be turned on or turned off to start or stop fluid flow to housing **12**.

Turning to FIG. **5**, FIG. **5** is a simplified diagram illustrating example details of an application of an embodiment of system **10**. Embodiments of system **10** may be used in a variety of applications, such as for collecting numerous blood samples substantially simultaneously. Blood **34** may be drawn from a human (or animal) and blood **34** may collect substantially simultaneously in plurality of containers **18**. The substantial simultaneous collection of blood in such manner can ease patient pain, speed up sampling time, and enable taking multiple samples substantially simultaneously without cross-contamination from one container to another or messy transfers between containers.

Turning to FIG. **6**, FIG. **6** is a simplified diagram illustrating example details of an application of an embodiment of system **10**. Embodiments of system **10** may be used in a variety of applications, such as for collecting numerous urine samples substantially simultaneously. Urine **36** may be drawn from a human (or animal) through a suitable catheter **38**, and may collect substantially simultaneously in plurality of containers **18**.

Turning to FIG. **7**, FIG. **7** is a simplified diagram illustrating example details of an embodiment of system **10**. Example container **18**A may comprise a flexible portion **40** and an inflexible portion **42**. Flexible portion **40** may be clamped on to example tube **16**A using example elastic valve **20**A. In some embodiments, container **18**A may comprise volumetric measurement markings **44**. When fluid fills container **18**A to a desired volume, for example, as indicated by volumetric measurement marking **44**, container **18**A may be detached from tube **16**A, whereupon elastic valve **20**A may close container **18**A, sealing the fluid inside.

Turning to FIG. **8**, FIG. **8** is a simplified flow diagram **50** illustrating example operations that may be associated with an embodiment of system **10**. At **52**, housing **12** may be attached to a fluid source (e.g., through hose **14**, spigot **33**, etc.) At **54**, fluid may be supplied from the fluid source to housing **12**. At **56**, plurality of containers **18** may be filled with the fluid. At **58**, containers **18** may be detached from corresponding tubes **16**.

Note that in this Specification, references to various features (e.g., elements, structures, modules, components, steps, operations, characteristics, etc.) included in "one embodiment", "example embodiment", "an embodiment", "another embodiment", "some embodiments", "various embodiments", "other embodiments", "alternative embodiment", and the like are intended to mean that any such features are included in one or more embodiments of the present disclosure, but may or may not necessarily be combined in the same embodiments.

The elements described herein may be made of any suitable materials, including metal (e.g., stainless steel, copper, brass,

6

bronze, aluminum, etc.), plastic, glass, elastomers, or any suitable combination thereof. Each element may also be made of a combination of different materials (e.g., housing and tubes may be made of plastic and containers may be made of elastic rubber; housing and tubes may be made of stainless steel and containers may be made of a combination of glass and flexible plastic; etc.). Any suitable material or combination of materials may be used for the components described herein without departing from the broad scope of the present disclosure.

In addition, the shapes shown and illustrated in the various FIGURES are for example purposes only. Various other shapes may be used herein without changing the scope of the present disclosure. For example, housing **12** may be conical, cylindrical, pyramidal, etc., without departing from the broad scope of the embodiments. Likewise, tubes **16** may be rigid, or flexible **18** without departing from the scope of the broad embodiments.

While the disclosure references several particular embodiments, those skilled in the art will be able to make various modifications to the described embodiments without departing from the true spirit and scope of the disclosure. It is intended that all elements or steps which are insubstantially different from those recited in the claims but perform substantially the same functions, respectively, in substantially the same way to achieve the same result as what is claimed are within the scope of the disclosure.

What is claimed is:

**1**. An apparatus comprising:

a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;

a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;

a plurality of containers, each container removably attached to a respective one of the hollow tubes;

a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers,

wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

**2**. The apparatus of claim **1**, wherein the first end of the housing has an outermost perimeter that is smaller in length than an outermost perimeter of second end.

**3**. The apparatus of claim **1**, wherein the opening at the first end of the housing has a threaded inner surface.

**4**. The apparatus of claim **1**, wherein each container comprises an expandable balloon portion.

**5**. The apparatus of claim **1**, wherein each container comprises a rigid portion and a flexible portion, the flexible portion disposed between the clamp and the respective one of the plurality of tubes.

**6**. The apparatus of claim **1**, wherein each container comprises a volumetric measurement marking providing a visual reference for filling the container to a desired volume.

US 9,051,066 B1

7

8

**7**. The apparatus of claim **1**, wherein the clamp is disposed outwardly from the container and clamps an inner surface of the container against an outer surface of the respective one of the plurality of tubes.

**8**. The apparatus of claim **1**, wherein the fluid comprises one or more of water, air and helium.

**9**. The apparatus of claim **1**, wherein each clamp comprises an O-ring configured to automatically seal the container in response to a force applied to the container in a direction away from the housing.

**10**. The apparatus of claim **1**, wherein the plurality of tubes comprise a first set of tubes each having a first length, and a second set of tubes each having a second length longer than the first length.

**11**. The apparatus of claim **1**, wherein the housing is attached to a valve coupled to a fluid source, wherein the valve is configured to control delivery of the fluid to fill the plurality of containers.

**12**. The apparatus of claim **11**, wherein the valve includes a lever that can be turned to a first position to turn on the valve and allow fluid flow to the housing, wherein the lever can be turned to a second position to turn off the value and stop fluid flow to the housing.

**13**. The apparatus of claim **11**, wherein one end of the valve is connected to a hose attached to a water supply, and the other end is threaded to the housing.

**14**. The apparatus of claim **1**, wherein each hole at the second end of the housing extends through an outer surface of the housing, the outer surface opposing the opening at the first end of the housing.

\*   \*   \*   \*   \*

# EXHIBIT B

Trials@uspto.gov                                          Paper 7
Tel: 571-272-7822                        Entered:  January 4, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

TELEBRANDS CORP.,
Petitioner,

v.

TINNUS ENTERPRISES, LLC,
Patent Owner.

_____

Case PGR2015-00018
Patent 9,051,066 B1

_____

Before PHILLIP J. KAUFFMAN, RICHARD E. RICE, and
TIMOTHY J. GOODSON, *Administrative Patent Judges.*

RICE, *Administrative Patent Judge.*

DECISION
Institution of Post-Grant Review
*37 C.F.R. § 42.208*

PGR2015-00018
Patent 9,051,066 B1

## I.    INTRODUCTION

Telebrands Corp. ("Petitioner") filed a Petition (Paper 1, "Pet.") for post-grant review of claims 1–14 of U.S. Patent No. 9,051,066 B1 (Ex. 1001, "the '066 Patent").  Tinnus Enterprises, LLC ("Patent Owner") filed a Preliminary Response (Paper 6, "Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 324, which provides that a post-grant review may be instituted only if "the information presented in the petition . . . demonstrate[s] that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable."  We determine that the information presented in the Petition demonstrates that it is more likely than not that Petitioner would prevail in showing that the challenged claims, except claims 7 and 9, are unpatentable.[1]  Pursuant to 35 U.S.C. § 324, we authorize a post-grant review to be instituted as to claims 1–6, 8, and 10–14 of the '066 Patent.

### A.  Related Proceedings

We are informed that Petitioner is named as a defendant in a federal district court case involving the '066 Patent (*Tinnus Enterprises, LLC v. Telebrands Corp.*, Civil Action No. 6:15-cv-00551-RWS-JDL (E.D. Tex.)). Pet. 3; Prelim. Resp. 7.

### B.  The '066 Patent

The '066 Patent, titled "System and Method for Filling Containers with Fluids," issued from U.S. Application No. 14/492,487, filed Sept. 22,

---

[1] Patent Owner has filed a statutory disclaimer under 35 U.S.C. § 253(a) in compliance with 37 C.F.R. § 1.321(a), disclaiming claims 7 and 9.  *See* Prelim. Resp. 62; Ex. 2011; 37 C.F.R. § 42.207(e).

PGR2015-00018
Patent 9,051,066 B1

2014.  Ex. 1001, at (54), (21), (22).  The '066 Patent claims the benefit of
U.S. Provisional Application No. 61/942,193, filed Feb. 20, 2014, and U.S.
Provisional Application No. 61/937,083, filed Feb. 7, 2014 (collectively,
"the Provisional Applications").  *Id.* at (60).

Figure 1 of the '066 Patent is reproduced below.



FIG. 1

Figure 1 is a simplified diagram illustrating an example embodiment
of a system for filling containers with fluids.  *Id.* at 2:33–34.  As shown in
Figure 1, system 10 includes housing 12 removably attached to hose 14 at
end A and to a plurality of hollow tubes 16 at end B.  *Id.* at 2:35–37.  A
plurality of containers 18, such as water balloons, may be clamped to
plurality of tubes 16 using elastic valves 20, which may comprise elastic
fasteners such as O-rings.  *Id.* at 2:51–59, 3:19–20.  In one embodiment,
housing 12 or tubes 16 may be shaken to detach filled containers 18 from
tubes 16.  *Id.* at 3:55–57.  The elastic valves or fasteners may constrict the

3

PGR2015-00018
Patent 9,051,066 B1

necks of containers 18, sealing them, when the containers slide off tubes 16.

*Id.* at 4:3–6.

### C. Illustrative Claim

Claim 1, which is the sole independent claim, is illustrative of the

claimed subject matter, and is reproduced below:

> 1.      An apparatus comprising:
>
> a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;
>
> a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;
>
> a plurality of containers, each container removably attached to a respective one of the hollow tubes; and
>
> a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers,
>
> wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

*Id.* at 6:30–53.

PGR2015-00018
Patent 9,051,066 B1

*D. The Asserted References*

Petitioner relies upon the following references (Pet. 14–15):

| Reference | Patent or Pub. No. or Description | Date | Exhibit No. |
|---|---|---|---|
| Cooper | US 5,826,803 | Oct. 27, 1998 | Ex. 1009 |
| Saggio | US 2013/0118640 A1 | May 16, 2013 | Ex. 1010 |
| Lee | US 2005/0004430 A1 | Jan. 6, 2005 | Ex. 1011 |
| Harter | WO 2015/027187 A2 | Feb. 26, 2015 (claiming priority to Aug. 23, 2013) | Ex. 1013 |
| Berardi | US 8,479,776 B2 | July 9, 2013 | Ex. 1014 |
| ZORBZ Replicator video | YouTube video showing prototype of ZORBZ Replicator | Aug. 19, 2014[2] | Ex. 1012 and Ex. 1018[3] |

Petitioner also relies on the Declarations of Dr. Ken Kamrin (Ex. 1015),
Dr. Greg Saggio (Ex. 1016), and Kendall Harter (Ex. 1017).

*E. The Asserted Grounds[4]*

Petitioner challenges claims 1–6, 8, and 10–14 of the '066 Patent on
the following grounds (Pet. 14–15, 24–26):

---

[2] This is the publication date asserted by Petitioner. *See* Pet. 34; Ex. 1012, 1;
Ex. 1017 ¶ 25.

[3] Exhibit 1018 is the ZORBZ Replicator video; Ex. 1012 is a compilation of
still frames from the video, with annotations (shown in red).

[4] Petitioner also challenges claims 7 and 9, but we need not address these
claims in view of Patent Owner's disclaimers, as mentioned in footnote 1
above.

PGR2015-00018
Patent 9,051,066 B1

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
|  | § 112(a)[5] | 1–6, 8, and 10–14 |
|  | § 112(b) | 1–6, 8, and 10–14 |
| Cooper and Saggio | § 103(a) | 1–4, 8, and 14 |
| Cooper, Saggio, and Berardi | § 103(a) | 11–13 |
| Cooper, Saggio, and Lee | § 103(a) | 1–4, 8, and 14 |
| Cooper, Saggio, Lee, and Berardi | § 103(a) | 11–13 |
| Zorbz Replicator video and one of either Harter, Saggio, or Lee | § 103(a) | 1–4, 8, and 14 |
| Zorbz Replicator video, Berardi, and one of either Harter, Saggio, or Lee[6] | § 103(a) | 11–13 |

## II. ANALYSIS

We turn now to Petitioner's asserted grounds of unpatentability to determine whether Petitioner has met the threshold of 35 U.S.C. § 324 for instituting review.

### A. Claim Construction

As a first step in our analysis, we determine the meaning of the claims. In a post-grant review, the Board gives claim terms in an unexpired patent their broadest reasonable interpretation in light of the specification of

---

[5] Although Petitioner cites only 35 U.S.C. § 112(b) in listing its grounds on page 14 of the Petition, Petitioner presents non-enablement arguments under 35 U.S.C. § 112(a) on pages 24–26 of the Petition.

[6] The omission of the ZORBZ Replicator video from this ground as listed on page 15 of the Petition is an obvious clerical error. *See* Pet. 77–78.

PGR2015-00018
Patent 9,051,066 B1

the patent in which they appear.  37 C.F.R. § 42.200(b); *see also In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1278, 1279 (Fed. Cir. 2015). Under the broadest reasonable interpretation standard, and absent any special definition, claim terms are given their ordinary and customary meaning, as would be understood by a person of ordinary skill in the art ("POSA") in the context of the entire disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Any special definition for a claim term must be set forth with reasonable clarity, deliberateness, and precision.  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

Petitioner contends that a POSA "would have been a person having a general knowledge about and experience with expandable containers, including without limitation balloons, and at least an associate's degree in science or engineering."  Pet. 15–16 (citing Ex. 1015 ¶¶ 10–13 and Ex. 1016 ¶¶ 10–13).  At this stage of the proceeding, Patent Owner does not dispute Petitioner's definition of a POSA.  *See*, *e.g.*, Prelim. Resp. 40.  For purposes of this Decision, we adopt Petitioner's definition.

### 1. "elastic fastener"

Petitioner contends that the claim term "elastic fastener," which appears in independent claim 1, should be construed to mean an "elastic valve."  Pet. 17–18 (citing Ex. 1001, 2:55–57; Ex. 1015 ¶¶ 34–39).  Patent Owner disagrees, arguing that as described in the Specification an elastic fastener is not an elastic valve, but rather may be a component of an elastic valve.  Prelim. Resp. 20 (citing Ex. 1001, 2:57–59).  Relying on dictionary definitions for "fasten" and "elastic," Patent Owner contends that the term "elastic fastener" should be construed as "a resilient device that attaches two separate elements."  *Id.* at 20–21.

7

PGR2015-00018
Patent 9,051,066 B1

As the parties do not appear to dispute the meaning of "elastic," for purposes of this Decision, we determine that the broadest reasonable interpretation consistent with the Specification of "elastic fastener" is its ordinary and customary meaning, i.e., an elastic element for attaching things together. We do not agree with Petitioner's proposed construction of "fastener," as meaning a valve, because it is not consistent with the ordinary and customary meaning of the term, and the Specification does not set forth a special definition.

### 2. "not less than"

Claim 1 recites that each elastic fastener is "configured to provide a connecting force that is *not less than* a weight of one of the containers when substantially filled with water." Ex. 1001, 6:42–44 (emphasis added). Petitioner does not propose an express construction for "not less than," but implicitly argues that this claim term means "greater than." Pet. 25. Patent Owner responds, and we agree, that the ordinary meaning of "not less than" is "equal to or greater than," and such meaning is consistent with the Specification. Prelim. Resp. 15 (citing Ex. 1001, 3:57–62).

Accordingly, for purposes of this Decision, we determine that the broadest reasonable interpretation consistent with the Specification of "not less than" is equal to or greater than.

### 3. "container"

Petitioner contends that the claim term "container," which appears in each of the challenged claims, should be construed to mean "an object for holding a fluid that expands in response to fluid flow therein." Pet. 17. Patent Owner responds that the Specification explicitly defines the term "container" as "an object that can hold something, such as fluids." Prelim.

PGR2015-00018
Patent 9,051,066 B1

Resp. 25 (quoting Ex. 1001, 2:53–55).  Nevertheless, Patent Owner proposes
to construe "container" somewhat differently, as an object for holding a
fluid."

For purposes of this Decision, we determine that the special definition
in the Patent is controlling.  Accordingly, the broadest reasonable
interpretation consistent with the Specification of "container" is an object
that can hold something, such as fluids.

### 4.  Other claim terms

At this stage of the proceeding, none of our determinations regarding
Petitioner's proposed grounds of unpatentability requires us to interpret
expressly any other claim term.  We, however, do discuss Patent Owner's
proposed construction of "substantially filled" *infra* in Section II.B.2.

### B.  Challenge under 35 U.S.C. § 112(a), (b)

#### 1.  Petitioner's Contentions

Petitioner contends that the claim term "substantially filled" as set
forth in claim 1 is indefinite under 35 U.S.C. § 112(b).  Pet. 20–24.
Petitioner first focuses its arguments on the term "filled."  *Id.* at 21–23.
Petitioner argues that "an expandable container can be considered 'filled' at
any time prior to when the expandable container reaches its expansion limit
and explodes."  *Id.* at 22 (citing Ex. 1015 ¶ 57).  Petitioner also argues that
the Specification "sets forth that the expandable containers are only 'filled'
when an individual subjectively determines that a 'desired size' of a
container has been reached."  *Id.* at 23 (citing Ex. 1001, 3:48–49; 4:60–62).
Petitioner further argues that "[t]he lack of clarity of the term 'filled' is
further enhanced by the modifier, 'substantially,' which is a term of degree."
*Id.* at 24.  Petitioner concludes that "[t]he specification and prosecution

9

PGR2015-00018
Patent 9,051,066 B1

history do not provide objective boundaries for those of ordinary skill in the art for the term 'filled,' let alone the term 'substantially filled.'" *Id.*

Additionally, Petitioner contends that the claim term "connecting force" is non-enabled and indefinite under 35 U.S.C. § 112(a), (b). *Id.* at 24–26. According to Petitioner, the term "connecting force" in claim 1 is "inconsistent with the basic laws of physics." *Id.* at 25. Petitioner argues that "[i]f the true connecting force is not less than a weight of one of the containers, i.e., greater than the weight of the container, the connecting force would cause the container to move upwards on the hollow tube." *Id.* at 25 (citing Ex. 1015 ¶ 73). Petitioner also argues:

> Because the specification of the '066 Patent does not provide an objective boundary for when an expandable container is "substantially filled," it follows that a person of ordinary skill in the art at the time of the invention of the '066 Patent would not be able to determine, with reasonable certainty, the amount of the connecting force that the elastic fastener is configured to provide.

*Id.* (citing Ex. 1015 ¶ 60).

### 2. *Patent Owner's Contentions*

Patent Owner relies on dictionary definitions for "substantially" and "filled" in arguing that "substantially filled" means "by and large holding as much as is conveniently contained." Prelim. Resp. 18–20. Patent Owner contends that "claim 1 of the '066 Patent provides that the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'" *Id.* at 28–29 (citing Ex. 1001, 6:48–52). According to Patent Owner, "the claimed invention is capable of being used to fill various containers," and "[o]ne of ordinary skill would understand that each of these different containers could

10

PGR2015-00018
Patent 9,051,066 B1

be filled with a different volume of fluid depending on the size, shape and characteristics of the container." *Id.* at 30 (citing Ex. 1001, 3:19–40).

### 3. Analysis

As an initial matter, we are *not* persuaded by Petitioner's non-enablement/indefiniteness argument that "the connecting force would cause the container to move upwards on the hollow tube" if "the true connecting force is not less than a weight of one of the containers, i.e., greater than the weight of the container." *See* Pet. 25. Petitioner's argument relies on an erroneous construction of "not less than" as meaning greater than. *See supra* Section II.A.2. Petitioner apparently does not contend, and in any event has not shown, that the connecting force would cause the container to move upwards on the hollow tube if the true connecting force were *equal* to a weight of one of the containers, as permitted by the claims and described in the Specification. *See* Ex. 1001, 3:60–62 ("[I]n a specific embodiment, the connecting force holding each container to its corresponding tube is exactly equal to the weight of the filled container."). A POSA would have understood that an elastic fastener, such as an O-ring or rubber-band, could be configured to clamp a container to a flexible hollow tube with sufficient constrictive force to hold the container to the tube, i.e., to generate a friction force or connecting force equal to the weight of the container when the container is filled to a desired volumetric level.

Turning to Petitioner's additional indefiniteness arguments, we are persuaded at this stage of the proceeding that the following claim language (referred to hereinafter as the "shake-to-detach" feature) is indefinite:

> each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water, . . . *such that shaking the hollow*

11

PGR2015-00018
Patent 9,051,066 B1

> *tubes in a state in which the containers are substantially filled*
> *with water overcomes the connecting force and causes the*
> *containers to detach from the hollow tubes.*

Ex. 1001, 6:41–50 (emphasis added).  The standard for indefiniteness that
we have applied in reaching this conclusion is whether the claim language is
"cast in clear—as opposed to ambiguous, vague, indefinite—terms."  *In re*
*Packard*, 751 F.3d 1307, 1313 (Fed. Cir. 2014); *see* Manual of Patent
Examining Procedure ("MPEP") § 2173.02(II) (Rev. 07.2015, Nov. 2015)
(advising Examiners that the indefiniteness standard is whether "the
language of the claim is such that a person of ordinary skill in the art could
not interpret the metes and bounds of the claim so as to understand how to
avoid infringement") (citation omitted).  We have analyzed the claim
language in light of: (1) the '066 Patent disclosure; (2) the teachings of the
prior art; and (3) the claim interpretation that would be given by one
possessing the ordinary level of skill in the pertinent art at the time the
invention was made.  *See* MPEP § 2173.02(II).

On the current record, we are not persuaded that the Specification or
prior art provides any objective standard for measuring the scope of "filled"
or "substantially filled."  The Specification teaches that containers 18 may
be considered "filled" when an individual user subjectively determines that a
desired size or volume has been reached.  Ex. 1001, 3:48–51; 4:6–9, 60–64.
"In some embodiments, containers 18 may be marked with volumetric
measurements, and fluid flow may be turned off when the fluid has filled
containers 18 to a desired volume."  *Id.* at 4:6–9.

Further, the Specification provides no limit on the amount of
"shaking" needed to detach a "filled" container.  *Id.* at 3:52–55 ("[T]he

PGR2015-00018
Patent 9,051,066 B1

connecting force holding filled containers 18 to tubes 16 may be overcome by an upward acceleration on tubes 16, for example, when they are shaken."); *id.* at 3:55–57 ("Thus, filled containers 18 may be detached by shaking housing 12 (or tubes 16) sufficiently vigorously to cause containers 18 to fall off from tubes 16."); 4:60–63 ("When containers 18 have reached a desired size and/or they are filled with the desired volume of fluid, they may be removed from tubes 16. They can be removed . . . by shaking them off.").

The force required to detach the containers varies based on numerous factors. For example, the force required to detach the containers varies based on the static friction force between the containers and tubes (which depends on the materials comprising the tubes and containers as well as the compressive elastic strength of the elastic fasteners) and the weight of the containers. *See id.* at 4:1–3.

Thus, the current record indicates that a container may be "filled" to any desired volumetric level and detached by "shaking" the housing or tube sufficiently vigorously to overcome the connecting force holding the container to the tube. As such, a POSA could not interpret the metes and bounds of the shake-to-detach feature so as to understand how to avoid infringement. Due to the ambiguity in both how much volume a container holds when it is "substantially filled" and how much "shaking" the hollow tubes must be subjected to, a skilled artisan would be unable to determine whether a given apparatus does or does not have the shake-to-detach feature required by the claims.

We are not persuaded by Patent Owner's argument that "substantially filled" means "by and large holding as much as is conveniently contained."

13

PGR2015-00018
Patent 9,051,066 B1

*See* Prelim. Resp. 18–20.  As understood at this stage of the proceeding, Patent Owner's argument is not supported by the teachings in the Specification, discussed above, and is not consistent with dependent claim 6, which recites: "The apparatus of claim 1, wherein each container comprises a volumetric measurement marking providing a visual reference *for filling the container to a desired volume*."  Ex. 1001, 6:65–67 (emphasis added). Rather, as Petitioner argues, the level to which a container is "filled" is subjective.  *See id.* at 3:49, 4:8–9; Pet. 22–23.

Nor are we persuaded by Patent Owner's argument that "the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'"  Prelim. Resp. 28–29.  Although the Specification describes an embodiment in which containers 18 "fall off under gravity" (Ex. 1001, 3:65–66), the shake-to-detach feature plainly requires "shaking" to detach the containers.

For these reasons, Petitioner has demonstrated a reasonable likelihood of prevailing under 35 U.S.C. § 112(b) with respect to its challenge to claims 1–6, 8, and 10–14 as unpatentable for indefiniteness.

### C. *Effective Filing Date of the '066 Patent*

Petitioner contends that the effective filing date of claims 1–4, 8, and 11–14 is September 22, 2014, i.e., the actual filing date of the '066 Patent, because the earlier-filed Provisional Applications purportedly do not provide written description support for the limitation "a plurality of *flexible* hollow tubes," as recited in claim 1.  Pet. 12; *see* 35 U.S.C. § 100(i)(1).  Petitioner argues that the Provisional Applications "explicitly disclose that the tubes are made of 'relatively rigid materials like metal, hard plastic, etc.'" (*id.* at

PGR2015-00018
Patent 9,051,066 B1

12, citing Ex. 1002, 5 and Ex. 1003, 5), and that "rigid" means deficient in or devoid of flexibility (*id.*).  Relying on the Declaration of Dr. Kamrin, Petitioner asserts that "[o]ne skilled in the art would not understand the February 7, 2014 Provisional to teach that the tubes are flexible." *Id.* (citing Ex. 1015 ¶ 19).

Patent Owner responds that the Provisional Applications do not state that the tubes "are rigid in some absolute sense, [but] merely that they are 'relatively rigid." Prelim. Resp. 56.  Patent Owner argues that "[t]he tubes could be 'relatively rigid' but still capable of bending or being bent." *Id.* Patent Owner also argues that a POSA would understand from Figure 1 of the Provisional Applications that the tubes could be flexible "in order to bend and accommodate the changing size of the balloons as they filled." *Id.* at 58.  Patent Owner further argues: "If these tubes were not flexible, the balloons would have no room to expand, and the device would not provide its intended function." *Id.*

Although we agree with Petitioner that "rigid" means deficient in or devoid of flexibility, we are persuaded by Patent Owner that the Provisional Applications adequately disclose the "flexible" tube limitation. Dr. Kamrin's testimony is not persuasive on this point because it focuses on the meaning of "rigid," rather than the term "relatively rigid" used in the Provisional Applications. Ex. 1015 ¶¶ 18–19.

As the term "relatively" means "somewhat,"[7] the term "relatively rigid" used in the Provisional Applications does not mean absolutely rigid,

---

[7] *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 987 (10th ed. 1993) (Ex. 3001).

PGR2015-00018
Patent 9,051,066 B1

but rather means somewhat rigid.  Indeed, the statement in the Provisional Applications that the tubes may be made of "relatively rigid materials" immediately follows a sentence stating that the containers "may be made of elastic materials, like rubber, silicone, etc.," indicating that "relatively rigid" means rigid in comparison to elastic materials such as rubber.  *See* Ex. 1002, 5; Ex. 1003, 5.  We are persuaded that a material that is somewhat rigid as disclosed in the Provisional Applications is not absolutely deficient in or devoid of flexibility.  The Provisional Applications thus disclose hollow tubes that are flexible to some degree, which is all the flexibility that claim 1 of the '066 Patent requires.  *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1369 (Fed. Cir. 2012) (agreeing with appellants' argument that "flexible" means "capable of being flexed," rather than "capable of being noticeably flexed with ease" as determined by the district court).

Accordingly, Petitioner has not persuaded us that the effective filing date of claims 1–4, 8, and 11–14 is September 22, 2014.

### D. Challenges under 35 U.S.C. § 103(a) Based in Part on ZORBZ Replicator Video[8]

Petitioner contends that claims 1–4, 8, and 11–14 would have been obvious over the ZORBZ Replicator video and one or more of Harter, Saggio, Lee, or Berardi.  *See supra* Section I.E.  Petitioner asserts that the

---

[8] We reach Petitioner's obviousness grounds at this stage of the proceeding, for two reasons, despite determining that the challenged claims are unpatentable for indefiniteness.  First, our indefiniteness determination is only preliminary at this stage of the proceeding.  Second, the shake-to-detach feature determined to be indefinite is a functional limitation that would appear to be met by any prior art that also meets the structural limitations of the claims, as discussed *infra* in Section II.E.2.

PGR2015-00018
Patent 9,051,066 B1

ZORBZ Replicator video is prior art to the challenged claims because it was made available to the public on the Internet at least as early as August 19, 2014, and the effective filing date of the challenged claims is September 22, 2014.  Pet. 62–63.  As discussed above, however, Petitioner has failed to persuade us that the effective filing date of the challenged claims is September 22, 2014.

Accordingly, we conclude, on this record, that it is more likely than not that Petitioner would *not* prevail on the ground that claims 1–4, 8, and 11–14 would have been obvious over the ZORBZ Replicator video and one or more of Harter, Saggio, Lee, or Berardi.

### E.  Challenges under 35 U.S.C. § 103(a) Based in Part on Cooper

A claim is unpatentable for obviousness "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103.[9]  A patent claim composed of several elements, however, is not proved obvious merely by demonstrating that each of its elements was known, independently, in the prior art.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).  In analyzing the obviousness of a combination of prior art elements, it can be important to identify a reason that would have prompted one of skill in the art to combine the elements in the way the claimed invention does.  *Id.*  A precise teaching

---

[9] Pub. L. No. 112-29, effective March 16, 2013, changed § 103.  Because the earliest-possible effective filing date of the challenged claims is not prior to March 16, 2013, we have quoted the changed version of § 103.

PGR2015-00018
Patent 9,051,066 B1

directed to the specific subject matter of a challenged claim is not necessary to establish obviousness. *Id.* Rather, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. The question of obviousness is resolved on the basis of underlying factual determinations, including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) objective evidence of nonobviousness, i.e., secondary considerations, when in evidence. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

Petitioner contends that claims 1–4, 8, and 11–14 would have been obvious over Cooper and one or more of Saggio, Lee, and Berardi. *See supra* Section I.E.

### 1. Overview of Prior Art

Cooper discloses a lawn and garden sprinkler that may be attached by female connector nut 16 to a garden hose. Ex. 1009, 2:20–26, Fig. 1. The sprinkler includes manifold 11, which is supplied water through inlet 15, and multiple flexible tube assemblies 18. *Id.* at 2:22–34. Figure 4 of Cooper is reproduced below.

PGR2015-00018
Patent 9,051,066 B1



Figure 4 is a perspective view of Cooper's sprinkler.  *Id.* at 2:8–9,

3:20–22.  As shown in Figure 4, the "tubes may be bent . . . by the user into

any desired curve."  *Id.* at 3:20–22.

Saggio discloses a system for filling a plurality of tie-less water

balloons.  Ex. 1010 ¶ 7.  Saggio also discloses a tie-less water balloon

including "a one-way valve . . . inside the balloon that allows water to enter

the balloon but not escape it."  *Id.*  Figures 5 and 7 of Saggio are reproduced

below:



19

PGR2015-00018
Patent 9,051,066 B1

Figure 5 is a cross-sectional view showing Saggio's tie-less water balloon filled with water.  *Id.* ¶ 13.  Figure 7 is a front elevation view of a multi-balloon filling assembly.  *Id.* ¶ 15.

As shown in Figure 7, the multi-balloon filling assembly includes water supply fitting 30, main conduit 32, lateral conduits 36, and plurality of conduit tips 37.  *Id.* ¶ 22.  The water supply fitting is adapted to connect to a hose.  *Id.* ¶ 23.  Conduit tips 37 are adapted to engage the necks of the balloons, such that a large number of balloons may be filled simultaneously.  *Id.* ¶ 24.

As shown in Figure 5, the tie-less water balloon is filled with water 26 through one-way channel 20 formed by outer wall 12 and inner membrane 18.  *Id.* ¶ 19.  After filling, the water inside the balloon presses the distal end of inner membrane 18 against outer wall 12 to close channel 20 and to prevent the water from escaping.  *Id.* ¶¶ 7, 19.  As such, inner membrane 18 functions as a one-way valve.

Lee relates to an endoscopic balloon insertion device for treatment of obesity.  Ex. 1011 ¶ 2.  Lee's insertion device includes inner guide pipe 3 and outer guide pipe 4.  *Id.* ¶ 31.  "[A] rubber band 2 with a high elastic force surrounds the inner guide pipe 3 for stably binding an opening of the balloon when the balloon 1 is expanded."  *Id.* ¶ 33.  Figure 6 of Lee is reproduced below.

PGR2015-00018
Patent 9,051,066 B1

**FIG. 6**



Figure 6 is a cross-sectional view illustrating a front end of inner guide pipe 3 and a movement of rubber band 2.  *Id.* ¶¶ 24, 34.  As illustrated in Figure 6, Lee discloses expanding the balloon through inner guide pipe 3 and then pushing outer guide pipe 4 in the direction of the front end to move the rubber band and release it from the inner guide pipe.  *Id.* ¶ 33.  "Therefore, the escaped rubber band seals and releases the balloon from the guide pipe for thereby inserting the balloon in the stomach in a state that the balloon is tied by the rubber band."  *Id.*

Berardi discloses a garden hose valve with an on/off lever, a threaded inlet coupler, and a threaded outlet coupler.  Ex. 1014, 7:48–66, Figs. 8, 9.

### 2.  *Analysis*

Petitioner first contends that claims 1–4, 8, and 14 would have been obvious over Cooper and Saggio, and that claims 11–13 would have been obvious over Cooper, Saggio, and Berardi.  With respect to these challenges, Petitioner asserts that inner membrane 18 of Saggio's tie-less water balloon is an "elastic fastener" as required by claim 1.  Pet. 44.  According to Petitioner, "[w]hen the water balloon is attached to a corresponding hollow tube of Cooper, the elastic internal membrane will press up against the

PGR2015-00018
Patent 9,051,066 B1

hollow tube, clamping the balloon to the hollow tube." *Id.* (citing (Ex. 1016 ¶ 39).

Petitioner has not persuaded us, however, that inner membrane 18 attaches the balloon to the hollow tube, as required under our interpretation of "elastic fastener." *See supra* II.A.1; Prelim. Resp. 48. In particular, Petitioner has not explained sufficiently why the inner membrane would press up against the hollow tube or, if it did, why the pressing of the inner membrane against the hollow tube would clamp or attach the balloon to the tube. As taught by Saggio, inner membrane 18 functions simply as a one-way valve. *See supra* Section II.E.1.

For these reasons, Petitioner has *not* demonstrated a reasonable likelihood of prevailing with respect to its challenges to claims 1–4, 8, and 14 as obvious over Cooper and Saggio and claims 11–13 as obvious over Cooper, Saggio, and Berardi.

Alternatively, Petitioner contends that claims 1–4, 8, and 14 would have been obvious over Cooper, Saggio, and Lee, and that claims 11–13 would have been obvious over Cooper, Saggio, Lee, and Berardi. As motivation to combine Cooper and Saggio, Petitioner points to Saggio's teaching of filling multiple water balloons at one time. Pet. 43. Petitioner argues that it would have been obvious for a POSA "to removably attach the balloons of Saggio to the flexible tubes of Cooper." *Id.* at 42. Petitioner further argues: "In designing an apparatus that can fill multiple water balloons at one time, one skilled in the art . . . would have thought to place water balloons at the end of a hose attachment apparatus that has multiple hollow tubes and dispenses water," such as disclosed in Cooper. *Id.* at 43–44.

22

PGR2015-00018
Patent 9,051,066 B1

Petitioner additionally argues that it would have been obvious "to modify Cooper in view of Saggio by using the rubber band of Lee to clamp the containers on to corresponding hollow tubes and automatically seal the containers upon [detaching] the container from its corresponding hollow tube." *Id.* at 57. Petitioner states: "It was well-known to those skilled in the art prior to the effective filing date of the '066 Patent that a rubber band was capable of sealing a fluid within a balloon." *Id.* at 56 (citing Ex. 1016 ¶ 75). Petitioner further argues that "while Lee teaches a system for use in treating obesity, Lee is analogous art to Saggio because both Saggio and Lee teach mechanisms for automatically sealing a balloon when a balloon is filled with fluid and detached from a hollow tube." *Id.* at 57 (citing Ex. 1016 ¶ 77). Petitioner asserts that the combination of Cooper, Saggio, and Lee teaches all limitations of claims 1–4, 8, and 14. *Id.* at 55–60.

As to claims 11–13, Petitioner contends that it would have been obvious to connect Berardi's valve to Cooper's housing, so as to provide an on/off lever for controlling delivery of water. *Id.* at 54 (citing Ex. 1016 ¶ 116). Petitioner asserts that the combination of Cooper, Saggio, Lee, and Berardi teaches all limitations of claims 11–13. *Id.* at 52–54, 62.

In response, Patent Owner argues that it would not have been obvious to combine Cooper and Saggio because combining their teachings would add nothing "other than being able to pose the self-closing balloons in desired locations." Prelim. Resp. 51. Patent Owner additionally argues that Lee is not analogous art to the claimed invention because it is directed to an endoscopic treatment for obesity. Prelim. Resp. 40–43.

On this record, we are persuaded by Petitioner that a POSA would have used Cooper's sprinkler as a multi-balloon filling assembly as taught

PGR2015-00018
Patent 9,051,066 B1

by Cooper, i.e., would have attached balloons to the ends of the flexible tubes of Cooper's sprinkler such that multiple balloons could be filled at one time.  *See KSR*, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").  Further, we are persuaded, at this stage of the proceeding, that Lee is reasonably pertinent to a particular problem the inventor of the '066 Patent was trying to solve, i.e., a mechanism for clamping and sealing an inflatable container to a tube and, after filling the container with fluid, sealing the container automatically upon detachment of the container from the tube.  Ex. 1001, 3:5–18; *see In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011).  On this record, we determine that Petitioner has provided adequate articulated reasoning with rational underpinning to support a legal conclusion of obviousness as to claims 1–4, 8, and 14 based on the combined teachings of Cooper, Saggio, and Lee.  *See KSR*, 550 U.S. at 418.

Patent Owner also argues that the combination of Cooper, Saggio, and Lee does not teach the shake-to-detach feature.  Prelim. Resp. 51–53.  According to Patent Owner, "[Petitioner] has not pointed to a single instance in any prior art that discloses 'shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from [the] hollow tubes.'"  Prelim. Resp. 52–53 (quoting Ex. 1001, 6:47–50); *see also id.* at 53 ("The technology presented by Lee would not inspire the shake-to-release process.  Endoscopic surgical procedures would likely not involve shaking of any mechanism, which could be very harmful to the patient's interests.").  As such, Patent Owner argues that, in order to satisfy the shake-to-detach

24

PGR2015-00018
Patent 9,051,066 B1

feature, the teachings of the prior art must disclose or suggest the recited *function*.

At this stage of the proceeding, we do not find this argument to be persuasive because the challenged claims are apparatus claims, which must be distinguished from the prior art in terms of *structure* rather than function. *See In re Schreiber*, 128 F.3d 1473, 1477–78 (Fed. Cir. 1997). A claim employing functional[10] terminology, such as claim 1 of the '066 Patent, covers any embodiment that meets the structural limitations of the claim and that is capable of performing the recited function. *See Swinehart*, 439 F.2d at 213 ("By its own literal terms a claim employing such [functional] language covers any and all embodiments which perform the recited function."); *see also Schreiber*, 128 F.3d at 1477 ("It is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable.") (citations omitted).

Petitioner contends that the shake-to-detach feature is an inherent characteristic of the structure taught by the combination of Cooper, Saggio, and Lee. Pet. 57–59. Relying on testimony from Dr. Kamrin, Petitioner asserts that when the balloons in the combined structure are substantially filled with water, "one can remove the balloons from the hollow tubes by shaking the hollow tubes." *Id.* at 59 (citing Ex. 1015 ¶ 95). In this regard, Dr. Kamrin testifies:

> 94. A different elastic fastener may produce a different average pressure P and thus produce a difference [sic]

---

[10] A claim term is functional when it recites a feature "by what it does rather than by what it is" (e.g., as evidenced by its specific structure or specific ingredients). *In re Swinehart,* 439 F.2d 210, 212 (CCPA 1971).

PGR2015-00018
Patent 9,051,066 B1

connecting force. However, the principles of physics remain the same. That is, it was well known to those skilled in the art prior to the effective filing date of the '066 Patent that the connecting force (Fconnecting) can be overcome when the mass of the fluid in the balloon (Mfluid) times effective gravity (geffective) is greater than or equal to the connecting force. Accordingly, when the mass of a substantially filled balloon (Mfluid) times effective gravity (geffective) is less than the connecting force (Fconnecting), the balloon will remain on the tube.

95. Additionally, it remains true that when the balloons are substantially filled with a mass of fluid that does not overcome the connecting force, instead of increasing the mass of the fluid in the balloon, an individual can remove the balloons from the hollow tubes by shaking the hollow tubes, which increases the effective value of gravity (geffective) and overcomes the connecting force.

Ex. 1015 ¶¶ 94–95. On this record, we are persuaded that the combination of Cooper, Saggio, and Lee teaches the shake-to-detach feature.

Having considered the Petition, the Preliminary Response, and the evidence of record, we are persuaded that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to its challenges to claims 1–4, 8, and 14 as obvious over the combination of Cooper, Saggio, and Lee, and claims 11–13 as obvious over the combination of Cooper, Saggio, Lee, and Berardi.

## III.   CONCLUSION

For the foregoing reasons, we determine that Petitioner has established a reasonable likelihood of prevailing under 35 U.S.C. § 103(a) on its challenges to claims 1–4, 8, and 14 as obvious over the combination of Cooper, Saggio, and Lee, and claims 11–13 as obvious over the combination

26

PGR2015-00018
Patent 9,051,066 B1

of Cooper, Saggio, Lee, and Berardi.  Petitioner also has established a reasonable likelihood of prevailing under 35 U.S.C. § 112(b) with respect to its challenge to claims 1–6, 8, and 10–14 as unpatentable for indefiniteness. The Board has not made a final determination concerning patentability of any of the challenged claims.

## IV.  ORDER

In consideration of the foregoing, it is hereby:

ORDERED that a post-grant review of claims 1–6, 8, and 11–14 of the '066 Patent is granted;

FURTHER ORDERED that pursuant to 35 U.S.C. § 324(a), a post-grant review of the '066 Patent is hereby instituted commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 324(d) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; and

FURTHER ORDERED that the trial is limited to the following grounds: (1) claims 1–4, 8, and 14 as obvious over the combination of Cooper, Saggio, and Lee, (2) claims 11–13 as obvious over the combination of Cooper, Saggio, Lee, and Berardi, and (3) claims 1–6, 8, and 10–14 for indefiniteness.

PGR2015-00018
Patent 9,051,066 B1

PETITIONER:

Robert T. Maldonado
Jeffrey L. Snow
COOPER & DUNHAM LLP
rmaldonado@cooperdunham.com
jsnow@cooperdunham.com

PATENT OWNER:

Robert D. Spendlove
LAUBSCHER, SPENDLOVE & LAUBSCHER, P.C.
rspendlove@laubscherlaw.com

Brendan E. Squire
DUNLAP BENNETT & LUDWIG, PLLC
bsquire@dbllawyers.com